**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Dawn B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50264 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff's motion for summary judgment [21], is granted, the Commissioner's motion for summary judgment [28], is denied, and the decision of the ALJ is reversed and remanded.

**BACKGROUND**

A. Procedural History

Plaintiff filed an application for disability insurance benefits on October 7, 2016. R. 205-06. She alleged that she suffered from fibromyalgia, multiple sclerosis, arthritis, IBS, gastric reflux, Raynaud's, carpal tunnel, tennis elbow, and anxiety and depression. R. 79. Plaintiff's claims were initially denied on January 9, 2017, and upon reconsideration on April 6, 2017. R. 79-88, 90-100. After a written request for a hearing, Administrative Law Judge ("ALJ") Patricia Kendall held a video hearing on November 16, 2018. R. 10-53. The ALJ heard testimony from Plaintiff as well as Dr. Steven S. Goldstein, an impartial medical expert, and Jill Radke, an impartial vocational expert. *Id.* On March 4, 2019, the ALJ issued a decision finding Plaintiff was not disabled and could do sedentary work subject to certain restrictions. R. 57-78. Plaintiff then filed a request for review of the decision with the Appeals Council, which denied review on April 16, 2020. R. 4-9. Plaintiff now seeks review of the ALJ's March 4, 2019, decision, which stands as the final decision of the Commissioner, *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007), under 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c).

B. Relevant Medical History

Plaintiff has a medical history of chronic pain associated with arthritis, Raynaud disease, right tennis elbow, carpal tunnel syndrome, fibromyalgia, and multiple sclerosis (MS). R. 339-40. On September 23, 2015, Plaintiff was seen by Dr. Bassam Soufan for bilateral hand pain, fatigue, and depression. R. 333. She was assessed with arthralgia, fibromyalgia, hand pain, malaise and

---
[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

fatigue, as well as anxiety. R. 334-35. On March 3, 2016, Plaintiff presented to Physician Assistant (PA) Tammy Kucia with right shoulder pain, pain from the right base of her neck to her fingers, and difficulty sleeping due to the pain. R. 339. She was assessed with myalgia, shoulder bursitis, tendonitis of her right wrist, and Raynaud's, and she was given an injection to control the bursitis. R. 340 -41. She was advised that her tennis elbow and wrist tendonitis are chronic, due to her occupation. R. 342. On May 19, 2016, Plaintiff presented to Dr. Robin Hovis with the same recurring pain in her right forearm and shoulder. R. 342. She offered counseling for instruction on coping, but Plaintiff was not interested. *Id.*

On May 23, 2016, Plaintiff went to Saint Anthony Medical Center complaining of aphasia. R. 398. Nurse Practitioner (NP) Lauren Weber noted Plaintiff was having difficulty forming her words, and that her family stated that she has not been herself. *Id.* On May 24, 2016, an MRI of Plaintiff's brain showed significant bilateral white matter disease, indicative of MS. R. 405-06. On June 1, 2016, she was seen by a neurologist, Dr. Faisal Raja, for an evaluation. R. 349. Dr. Raja noted that while she had experienced numbness in her face two weeks ago it had since resolved, and that she continued to have slurred speech which had improved. *Id.* He also noted that the MRI of the brain was a concern of MS, and that Plaintiff should proceed with a spinal tap to rule out other causes. *Id.* On June 10, 2016, a blood panel noted findings consistent with clinically definite MS. R. 377-78. On June 24, 2016, Plaintiff was again seen by Dr. Raja to discuss MRI and CSF findings supportive of a clinical impression of MS. R. 353. Dr. Raja discussed treatment options and stated that she could return to work part-time. *Id.*

On September 22, 2016, Plaintiff visited Dr. Bassam for chronic muscular pain, including abdominal pain, arthralgias, fatigue, headaches, myalgias, nausea, neck pain, numbness of the legs and hands, and weakness. R. 362. On October 4, 2016, at a follow up visit with neurology, she again complained of right neck, shoulder, arm, and leg pain. R. 365. Subsequently, on October 24, 2016, she was prescribed a muscle relaxer that blocks muscle spasms. R. 370. On November 17, 2016, Plaintiff returned to Dr. Raja for a follow up visit, where she did not report any new symptoms but stated that her emotions were very labile. R. 454. On December 9, 2016, psychologist Peter Thomas diagnosed her with adjustment disorder with anxiety and depression. R. 447. On December 26, 2016, she presented to the ER with right arm, leg, and hip pain. R. 435.

On March 17, 2017, Plaintiff returned to Dr. Raja for a follow-up visit complaining of soreness in her shoulders and legs and stated that her medication was helping with pain in her right lower back that sometimes radiates down to her leg. R. 465. On July 12, 2017, she continued to experience pain and numbness on her right side as well as urinary urgency. R. 468. On August 22, 2017, Plaintiff was seen by Dr. Bassam for a follow-up visit regarding anxiety, and her Cymbalta prescription was increased, and she was also prescribed Xanax. R. 476. On September 14, 2017, Plaintiff returning to Dr. Raja with a tingling sensation on her right side which had been recurring for several months. R. 477-78. Dr. Raja found that upon physical examination she had mild weakness in her right upper and lower extremities. R. 480. On December 14, 2017, Plaintiff again saw Dr. Raja for complaints of intermittent aching in her neck, shoulder, and right arm. *Id.* Dr. Raja found that her MS was stable, and that she had right shoulder tenderness and aching which had not responded to oral medications. R. 482. He stated that she may benefit from pain management. *Id.*

On January 16, 2018, Plaintiff was seen by Dr. Evelyn Oteng for generalized body aches and pains, with worse pain in her low back and right leg. R. 554. Dr. Oteng found that she exhibited a decreased range of motion, tenderness, and pain in her lumbar back, although she exhibited no swelling or edema. R. 556. On May 22, 2018, she attended physical therapy to address her back pain. R. 488. On examination, the physical therapist found that she had a slow cadence to her gait and relied heavily on her arms, and that she reported having difficulty walking. R. 489-90. On June 7, 2018, her physical therapist noted that she continued to experience pain in her mid and low back region, and that she was continuously changing her positioning throughout the day and night to help control pain symptoms. R. 496. By June 15, 2018, Plaintiff reported that her back was sorer after her last therapy session, and that her low back and shoulder pain were worse. R. 501. The following week, she reported to her physical therapist that she was having pain constantly all over her body and that she was struggling to do daily activities. R. 506.

On September 18, 2018, Plaintiff returned to Dr. Oteng with chronic low back pain made worse by activity. R. 542. On September 21, 2018, she was administered trigger point injections for her pain. R. 549. On October 2, 2018, Plaintiff reported to Dr. Oteng that she did not experience any relief from the injections and that the only thing providing any relief was her ongoing medication. R. 551. On November 6, 2018, Dr. Oteng completed a medical source statement, and stated that Plaintiff would require a job that permits shifting positions at will, includes periods of walking around and also includes 30-minute breaks throughout the workday. R. 606. On November 13, 2018, Dr. Raja also completed a medical source statement indicating that Plaintiff would require to shift positions at will during the day and have several unscheduled breaks of 15 minutes. R. 610.

## STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at * 5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, __U.S.__, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at * 7 (N.D. Ill. Feb. 27, 2013).

The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). Additionally, "[a]n ALJ need not mention every piece of

medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

## DISCUSSION

Plaintiff raises three main arguments: 1) the ALJ's RFC was not supported by substantial evidence; 2) the ALJ erred in evaluating the opinion evidence; and 3) the ALJ's subjective symptom assessment was flawed. Because this Court finds that the ALJ erred in evaluating the opinion evidence, the other issues will not be addressed.

Plaintiff argues that the ALJ failed to give appropriate weight to the opinion of her treating physician, Pain Specialist Dr. Oteng. Dr. Oteng provided a medical source statement that addressed her opinion concerning Plaintiff's condition from January to November of 2018. R. 605-08. She opined that Plaintiff would need a job that permits shifting positions at will from sitting, standing, or walking. Regarding whether Plaintiff needed to walk around during an 8-hour working day, the medical source questionnaire is ambiguous; however, Dr. Oteng seems to note that Plaintiff would need to walk around once for 15-minutes during a regular workday. R. 606. Moreover, she noted that Plaintiff would need unscheduled 30-minute breaks during a working day due to her pain, that she would be off task approximately 20% of the time, and that she would be absent from work about two days per month. R. 606-08.

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. 404.1527(c)(2)). The treating physician rule has been described as a two-step process. *See Wallace v. Colvin*, 193 F. Supp. 3d 939, 946 (N.D. Ill. 2016). First, the ALJ must determine whether to give the treating physician's opinion "controlling weight," by evaluating if the opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the ALJ decides not to give controlling weight to a treating physician's opinion, she must evaluate certain checklist factors to determine the amount of weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Those factors include: examining relationship, treatment relationship (length and nature of treatment relationship and frequently of examination, as well as nature and extent of the treatment relationship), supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(c). While the Court "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation." *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021) (internal citation omitted). A treating physician has "greater familiarity with the claimant's condition and circumstances," such that an ALJ may only discount a treating physician's opinions based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

In assessing Dr. Oteng's opinion, the ALJ did not adequately consider Step One of the

treating physician rule. First, the ALJ found that the restrictions noted by Dr. Oteng were not "work preclusive" and that "the noted breaks and need to walk around are accommodated by standard breaks offered during an 8 hour workday." R. 70. Plaintiff argues Dr. Oteng opined that Plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking and that there is no support in the record for the statement that the sedentary category of jobs would allow this sort of restriction. As noted by Plaintiff, the vocational expert did not comment on the necessity to change positions "at will" from sitting, standing, or walking in the "light" category of jobs. Therefore, the conclusion that Dr. Oteng's restrictions are not "work preclusive," is not supported by the record or testimony – at least as to this "at will" restriction.

In support of her decision not to give the remainder of Dr. Oteng's opinion controlling weight, the ALJ stated that it did not appear that Dr. Oteng "tested or observed much in the way of physical functioning as Dr. Oteng's physical examinations are largely normal, but for diffuse axial spinal tenderness." R. 70. The ALJ also pointed out that Dr. Oteng noted a need for a functional capacity evaluation to determine her other limitations. *Id.* The ALJ further stated that she gave Dr. Oteng's opinion "some weight to the extent it is not inconsistent with the evidence of record, but it is not clear from the opinion or treatment notes why claimant would be absent 2 days a month or off task 20% of the time. Accordingly, I have not given those statements any weight." *Id.*

While Plaintiff attacks this explanation on several grounds, the overarching argument is that the analysis was cursory. This Court agrees. It is well settled that whether a doctor's opinion is consistent with the medical record is an important factor in determining whether a treating source's opinion is entitled to controlling weight. *See, e.g.*, *Lacher v. Saul*, 830 Fed. App'x 476, 478 (7th Cir. 2020). However, when an ALJ relies on just one rationale that is weakly supported, it is difficult to determine whether the ALJ has undergone the proper analysis. Here, the ALJ's failure to consider the entirety of Dr. Oteng's notes was improper.

Dr. Oteng did note that a formal functional capacity evaluation would be required for her to estimate certain functional limitations. R. 606. However, Dr. Oteng did not find a functional capacity evaluation necessary to determine that Plaintiff would need a job that permitted shifting positions at will, periods of walking, unscheduled breaks, and that Plaintiff would be likely to be off task for approximately 20% of the workday and absent about two days per month. R. 606-08. Plaintiff was examined by Dr. Oteng on several occasions over the course of almost a year. During those examinations, Plaintiff complained of generalized body aches and pains and significant pain in her low back and leg at such a high pain level that it increased to 10 with activity. R. 544, 547, 554. During those visits, Dr. Oteng conducted physical examinations of Plaintiff, looking at things like range of motion and tenderness relevant to her pain issues. The notes from these visits could support Dr. Oteng's conclusion that Plaintiff would have difficulty remaining in one position and would require breaks and absences based on her pain. However, the ALJ ignored the totality of these notes and instead set forth one conclusory rationale—that Dr. Oteng's opinion was not consistent with the medical evidence. This conclusion in turn is the basis for the ALJ's statement that Dr. Oteng's physical examinations are "largely normal, but for diffuse axial spinal tenderness" and her observation that Dr. Oteng did not opine on Plaintiff's exertional activities. Dr. Oteng is a pain specialist. The ALJ's conclusion that Dr. Oteng's physical examinations are "largely normal" misses the mark. Dr. Oteng's notes include observations that Plaintiff complained of very

5

high pain levels, had diffuse tenderness in the area of her pain, and had attempted injections to relieve her pain, which failed. The fact that Dr. Oteng's physical examinations of Plaintiff in areas unrelated to her pain were "normal" is irrelevant to her ability to assess Plaintiff's need for work restrictions relevant to her daily pain, an area of Dr. Oteng's expertise. Because the ALJ ignored facts that arguably supported Dr. Oteng's opinion without explanation and relied on irrelevant "normal" examinations, the ALJ committed error at Step One of the treating physician rule.

Plaintiff also points out that the ALJ did not address the majority of the factors outlined in 20 C.F.R. § 404.1527, which are to be addressed at Step Two of the treating physician analysis. The Commissioner responds that an ALJ's decision should be upheld where it is supported by substantial evidence even "without marching through the factors." *Karr v. Saul*, 989 F.3d 508, 512-513 (7th Cir. 2021). While this may be true, the ALJ's analysis was too cursory, as it only addressed one of the checklist factors briefly. The ALJ did mention the length of treatment, noting that Dr. Oteng had been Plaintiff's pain management physician since January 2018, R. 70, but she failed to discuss how she factored this into her analysis of the weight to give Dr. Oteng's opinion. Examining the checklist factors (such as the nature and extent of the treatment relationship, the frequency of examination, and the consistency and supportability of Dr. Oteng's opinion), may have supported giving Dr. Oteng's opinion greater or less weight. As noted above, an ALJ may only discount a treating physician's opinions based on good reasons "supported by substantial evidence in the record." *Campbell*, 627 F.3d at 306. On remand, if the ALJ properly determines that Dr. Oteng's opinion does not deserve controlling weight at Step One, then the ALJ must support this finding with substantial evidence.[2]

Because the Court is remanding the ALJ's decision for a lack of proper analysis as to the treating physician rule, the Court need not address Plaintiff's additional arguments.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [21], is granted, the Commissioner's motion [28], is denied, and the decision of the ALJ is reversed and remanded.

Date: 06/30/2022          ENTER:

*Margaret J. Schneider*
United States Magistrate Judge

---

[2] As to Plaintiff's other treating physician, Dr. Raja, he opined that Plaintiff would need a job that allowed for shifting positions at will from sitting, standing, and walking. He also stated that Plaintiff would need 3 unscheduled breaks during an 8-hour workday. Like her decision as it concerned Dr. Oteng, the ALJ noted that these restrictions were not "work preclusive." The ALJ gave Dr. Raja's opinion "some weight" but failed to adequately address the restrictions noted by Dr. Raja. On remand, the ALJ should adequately address the treating physician rule as to Dr. Raja as well.